## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AUDREY LYNN HENSON**, an individual,<br>213 12th Ave NE<br>St. Petersburg, FL 33701<br><br>Plaintiff,<br><br>v.<br><br>**COLLEGE TO CONGRESS, LLC**, an entity;<br>**KAYANN SCHOENEMAN**,<br>**MORGAN RAKO GANG**,<br>**JAMES E. TYRRELL III**,<br>**REGGIE NANCE**,<br>**ALVIN CHAN**,<br>**SAATHVIK ALETY**,<br>**PEGGY ELLIS**,<br>**BRIAN JOHNSON**,<br>**LUCIA LEBENS**,<br>**EMILY WEEMS**<br>We Work c/o College to Congress<br>80 M St SE<br>Washington, DC 20003<br><br>Defendants. | Civil Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Discriminatory Termination<br>   Based on Political Affiliation<br>2. Breach of Contract<br><br>Jury Trial Demanded |

## COMPLAINT

1.      Plaintiff Audrey Lynn Henson ("Mrs. Henson"), an individual, brings this action against College to Congress, LLC ("C2C"), an entity, KayAnn Schoeneman ("Ms. Schoeneman"), Morgan Rako Gang ("Ms. Rako Gang"), James E. Tyrrell III ("Mr. Tyrrell"), Reggie Nance ("Mr. Nance"), Alvin Chan ("Mr. Chan"), Saathvik Alety ("Mr. Alety"), Peggy Ellis ("Ms. Ellis"), Brian Johnson ("Mr. Johnson"), Lucia Lebens ("Ms. Lebens"), and Emily Weems ("Ms. Weems"), in their official capacities, (collectively "Defendants") for violation of the D.C. Human Rights Act (DC Code § 2-1401.01, et al.) and breach of contract and states the following in support.

### Introduction

2.      C2C, the very organization that Mrs. Henson founded and steadfastly led for six

1

years, unlawfully terminated, penalized, and mistreated her based solely on her conservative political values.

3.     Upon announcing her intention to run for election to the United States House of Representatives in 2021 as a candidate to represent Florida's 13th District as a Republican, the Board of Directors ("the Board") initiated a calculated, deceptive, and unlawful sequence of events with the goal of removing Mrs. Henson from her leadership positions at C2C.

4.     To retain her employment and board position while running for office, the Board ordered her to step down as CEO and official spokesperson.

5.     C2C made it clear both from their actions, statements, and omissions that their motivation for removing Mrs. Henson from her official roles was because of her political affiliations.

6.     During this process, members of the Board made both implicit and explicit statements indicating that her conservative Republican beliefs posed a threat to the financial and reputational stability of the organization. According to the Board, however, these consequences would not occur if Mrs. Henson identified and ran for Congress as a Democrat.

7.     Mrs. Henson was reassured by the Board that her income, health insurance benefits, and position at the company could be retained during her race—none of these promises were upheld.

8.     To further deceive Mrs. Henson, the Board did not conform their procedures to the requirements of C2C's Bylaws by failing to call the meeting for the purpose of "removing" Mrs. Henson from her aforementioned positions, failing to provide her with the appropriate requisite notice, and terminating her absent a two-thirds majority vote of the Board.

9.     As a result, today and since November 17, 2021, Mrs. Henson has no role or connection with C2C.

10.     Now, Mrs. Henson has been forced to watch unlawful actors take over the helm of the nonprofit she founded six years ago all because of her personal, political, and statutorily protected beliefs.

*Jurisdiction & Venue*

11.     This court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because this is a civil action between Mrs. Henson, a citizen of Florida and C2C, a 501(c)(3) corporation incorporated in the District of Columbia, with its principal place of business in the District of Columbia, Ms. Schoeneman, a citizen of Virginia, Ms. Rako Gang, a citizen of the District of Columbia, Mr. Tyrrell, a citizen of Virginia, Mr. Nance, a citizen of Virginia, Mr. Chan, a citizen of Virginia, Mr. Alety, a citizen of the District of Columbia, Ms. Ellis, a citizen of Virginia, Mr. Johnson, a citizen of Virginia, Ms. Lebens, a citizen of Virginia, and Ms. Weems, a citizen of Virginia.

12.     Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.  C2C's only office is located in Washington, D.C, C2C's business operations and activities occur exclusively in Washington, D.C., and Plaintiff's employment was based in Washington, D.C.

*Parties*

13.     Plaintiff Audrey Lynn Henson is an individual who resides in St. Petersburg, Florida. Mrs. Henson is a citizen of the state of Florida.

14.     Defendant College to Congress, LLC is a District of Columbia-based 501(c)(3) charitable corporation with headquarters located in the District of Columbia. Defendant maintains offices and does business in the District of Columbia. Defendant is an employer as defined by DC Code § 2-1401.02 (10).

15.     Defendant C2C is a nonpartisan nonprofit charitable organization founded by Mrs. Henson based on her experience as a former welfare recipient who wanted to intern and work in Congress and Washington, D.C. to better the lives of working class Americans. She created the organization with the goal of "empowering low-income students with the funding, education, and access to work in positions of power that for decades was reserved for only the elite and their children providing access for the next generation of public servants." C2C

3

"provides scholarships, training, mentorship, and more, for college students from underserved and low-income communities to intern and soon-after work in Congress." C2C "provides fully funded internship opportunities for students who have the passion to serve in public service but don't have the means to do so."

16.     Defendant KayAnn Schoeneman is an individual who, upon information and belief, resides in Virginia. Ms. Schoeneman is the President of the Curley Company. Ms. Schoeneman currently serves as Board Chairwoman of the Board of Directors of C2C. Defendant is an employer as defined by DC Code § 2-1401.02 (10).

17.     Defendant Morgan Rako Gang is an individual who, upon information and belief, resides in the District of Columbia. Ms. Rako Gang is the Chief Operating Officer on the Board of Directors of C2C. Defendant is an employer as defined by DC Code § 2-1401.02 (10).

18.     Defendant James E. Tyrrell III is an individual who, upon information and belief, resides in Virginia. Mr. Tyrell is a member attorney at Dickinson Wright, PLLC. Mr. Tyrrell currently serves as Ex-Officio Counsel on the Board of Directors of C2C. Defendant is an employer as defined by DC Code § 2-1401.02 (10).

19.     Defendant Reggie Nance is an individual who, upon information and belief, resides in Virginia. Mr. Nance is the Vice President of Finance and Administration at The Public Affairs Council. Mr. Nance currently serves as Board Treasurer on the Board of Directors of C2C. Defendant is an employer as defined by DC Code § 2-1401.02 (10).

20.     Defendant Alvin Chan is an individual who, upon information and belief, resides in Virginia. Mr. Chan is the Senior Director for Public Policy at Samsung Electronics America. Mr. Chan serves as the Senior Director for Public Policy on the Board of Directors of C2C. Defendant is an employer as defined by DC Code § 2-1401.02 (10).

21.     Defendant Saathvik ("Saat") Alety is an individual who, upon information and belief, resides in the District of Columbia. Mr. Alety is a Partner at Federal Hall Policy Advisors, LLP. Mr. Alety serves as the Director of Federal Affairs and Public Policy on the Board of Directors of C2C. Defendant is an employer as defined by DC Code § 2-1401.02 (10).

22.    Defendant Peggy Ellis is an individual who, upon information and belief, resides in Virginia. Ms. Ellis is the Founder & President of Ellis & Company, LLC. Ms. Ellis serves as Senior Partner on the Board of Directors of C2C. Defendant is an employer as defined by DC Code § 2-1401.02 (10).

23.    Defendant Brian Johnson is an individual who, upon information and belief, resides in Virginia. Mr. Johnson is the Vice President of Government & Public Affairs at Veterans Guardian. Mr. Johnson serves as a Board Member on the Board of Directors of C2C. Defendant is an employer as defined by DC Code § 2-1401.02 (10).

24.    Defendant Lucia Lebens is an individual who, upon information and belief, resides in Virginia. Ms. Lebens is the Vice President of Government Relations & Public Policy at Navient. Ms. Lebens serves as a Board Member on the Board of Directors of C2C. Defendant is an employer as defined by DC Code § 2-1401.02 (10).

25.    Defendant Emily Weems is an individual who, upon information and belief, resides in Virginia. Ms. Weems is Head of Government and Policy Affairs at Capital One. Ms. Weems serves as Board member on the Board of Directors of C2C. Defendant is an employer as defined by DC Code § 2-1401.02 (10).

## FACTS

26.    Mrs. Henson was raised by a single mother in a mobile home for most of her life before moving to Saint Petersburg, Florida where she lived on government welfare programs.

27.    She served as a Congressional Intern in the offices of United States Senator Marco Rubio from Florida and Congressman Joe Barton from Texas. During that time, Mrs. Henson was a Pell Grant recipient, and took on two jobs and student loans in order to have the financial stability to intern unpaid in Congress.

28.    Based on her professional and financial experience working in Washington, D.C., and realizing that talented students with limited financial resources and no political connections often forgo applying to work in Congress because they simply cannot afford it, Mrs. Henson wanted to help students from low-income backgrounds intern and work in public service without

5

taking on financial burdens she incurred.

29.     In April 2016, Mrs. Henson informally became the Founder, COO, and CEO of C2C with the mission of "creating a more inclusive and effective Congress by empowering the next generation of public servants." C2C hosted its inaugural class of six students in 2017. Mrs. Henson was later named the President of C2C in 2017.

30.     C2C hosts two programs: C2C University ("C2C-U"), an online curriculum designed to help college students and recent graduates secure and succeed in paid internships on Capitol Hill, that Mrs. Henson created in the wake of the pandemic, and the Capitol Internship Program which helps its student members secure congressional internships, pairs them with bipartisan allies, provides training and development, connects them with jobs on Capitol Hill, and covers all expenses.

31.     Upon signing her employment agreement on January 1, 2018, Mrs. Henson officially became the CEO and COO of C2C.

32.     Under Mrs. Henson's leadership, C2C provided internship opportunities and job opportunities to over 2,000 students from across the country, including veterans. She also secured high-valuation donation contracts from various organizations that supported C2C's mission, and held a 95% donor retention rate for C2C.

33.     During her tenure as Founder, CEO, and official spokesperson, Mrs. Henson never allowed her personal political beliefs to influence the operations or public reputation of C2C.

34.     Mrs. Henson fervently supported C2C's commitment to 50/50 bipartisanship in student internship placements, and matching interns with mentors from the opposite political party through its Bipartisan Allies Program.

35.     Section 2.1 of the C2C Employee Handbook reads, "C2C is committed to providing equal opportunity for all employees and applications without regard to . . . political affiliation." Section 4.7 of the Handbook also states, "Employees may pursue political activities, such as running for office, holding elected office, or working on political campaigns, provided

the activities are [not] inconsistent with C2C's mission and values."

36.    At a C2C Board Meeting on July 15 2021, Mrs. Henson announced her interest in running for election to the United States House of Representatives to represent Florida's 13th Congressional District as a Republican.

37.    Although she identified as a Republican for candidacy purposes, Mrs. Henson has never fully aligned herself with establishment-Republican ideals, and instead champions the grassroots conservative platform.

38.    On July 23, 2021, based on mounting political pressure from the Board, Mrs. Henson agreed to relinquish the title of CEO and official spokesperson of C2C; however, she retained her roles as Senior Advisor and President of the Board, and her daily activities, compensation package, and duties remained the same.   The Board voted to keep Henson on board and retained her CEO role in the event she lost her race.

39.    On July 31, 2021, C2C announced that Former Representative Dennis Ross ("Mr. Ross") would replace Mrs. Henson as Interim CEO. Mr. Ross served as a Republican Representative from Florida in the United States House of Representatives for eight years.

40.    C2C appointed Mr. Ross as Interim CEO, on a twenty-hour a month contract, despite his affiliation with the Republican party because he did not align with the same conservative, grassroots values adopted by Mrs. Henson. Mr. Ross was the "right" type of Republican for the Board.

41.    On September 7, 2021, Mrs. Henson formally announced her candidacy for Representative to Florida's 13th District as a Republican. Mrs. Henson's campaign championed her conservative values including, but not limited to, limited government, being pro-life, medical freedom, election integrity, free markets, safe and secure borders, anti-Socialist policies, combatting the sexualization of children, and Christian values.

42.    On October 22, 2021, Mrs. Henson spoke on the phone with KayAnn Schoeneman ("Ms. Schoeneman"), Chairman of the Board, and Mr. Ross about Ms. Schoeneman's desire to remove her from the organization. They discussed concerns that Nike, Inc. would not partner

with and donate to C2C, as many other high-profile corporate donors had previously done, because of Mrs. Henson's conservative political beliefs. Ms. Schoeneman and Mr. Ross reassured Mrs. Henson that, if she chose to focus her efforts on her campaign, she would be paid severance and could maintain contacts with C2C as a consultant.

43.     During this call, Ms. Schoeneman and Mr. Ross reassured Mrs. Henson that she would retain her medical insurance benefits during her Congressional campaign because they were aware of an autoimmune disease Mrs. Henson contracted, as a residual effect from being diagnosed with COVID-19, that required her to seek treatment on a regular basis.

44.     Later that same day, Mrs. Henson received an email stating C2C's initiative of "Separating Audrey from C2C." The email read, in part, "[g]iven the time commitment needed to run for Congress, and the emerging potential reputational risk linked to C2C given the dynamics of Audrey's primary, we agreed we'd like to explore options to separate Audrey from C2C effective (potentially) November 1, 2021." Mrs. Henson never agreed to any terms surrounding her separation.

45.     C2C's Bylaws govern the procedure for "Removal of Directors." It states, "[a]ny Director may be removed from office, with or without cause, by a vote of two-thirds of the Directors then in office. The removal of a Director may only occur at a meeting called for the purpose of removing such Director. The meeting notice shall state that the purpose, or one of the purposes, of the meeting is removal of the Director. A removed Director's successor may be elected at the same meeting to serve the unexpired term of the removed Director."

46.     In addition, the "meeting notice" was not provided to Mrs. Henson, or any other Board member, at least five days before the date of the meeting. C2C's Bylaws states, "[w]henever these Bylaws require notice to be given to any Board member, the notice shall be given by mailing a notice of the meeting at least five (5) days before the date of the meeting or by telephone, facsimile, personal delivery or electronic transmission at least three (3) days before the date of the meeting."

47.     On October 27, 2021, the Board called a meeting. Minutes before the meeting was

scheduled to occur, the previously approved Board Meeting Agenda was discarded and replaced with a new agenda by Ms. Schoeneman and Ms. Rako Gang. The unapproved Board Meeting Agenda included, in material part, the following line items: (1) Motion to Call the Meeting to Order (KayAnn); (2) Operational and Financials Update (KayAnn + Reggie + Dennis); (3) Review of 2021 Goals (KayAnn + Dennis + Audrey); (4) 2022 Fundraising Strategies (Group discussion, kicked off by KayAnn with goal of identifying 3 priorities/strategies); (5) State and Local Expansion (Dennis); and (6) Motion to Adjourn the Meeting (KayAnn).

48.    At the meeting the Board voted to terminate Mrs. Henson's remaining positions at C2C. In violation of the C2C Bylaws, the vote did not receive a two-thirds majority, and the only reference to removal on the Wednesday, October 27, 2021 Board Meeting Agenda was "CEO + C2C [S]tructure [U]pdate." No prior notice was provided to Mrs. Henson, or the other Board Directors, before the October 27, 2021 Board meeting.

49.    The Board claimed that Mrs. Henson's campaign posed significant risks to C2C and stated that "Major current donors of C2C have signaled concerns over Audrey's candidacy for Congress and ties to C2C;" "[Mr. Ross] recommended that Audrey separates from C2C in order to create a clear separation between her congressional race and C2C;" "If we don't do this, we can expect some closed doors from big funders;" "[It] [p]rovides C2C the best chance at avoiding politically motivated allegations of wrongdoing;" and "Any appearance of partisanship impedes fundraising and the proper functions of a non-profit [organization]."

50.    The Board claimed that 60% of its funding was at risk and claimed that its largest donor, The William and Flora Hewlett Foundation, a nonpartisan organization dedicated to advancing education for all, preserving the environment, supporting the performing arts, strengthening communities, and fostering philanthropy and gender equity, would cease funding despite Mrs. Henson's successful renewal of its $600,000 contract that same year.

51.    The Board further chastised Mrs. Henson by saying, "There won't be a C2C if you stay" and indicated that they "need[ed] a clean break" from her.

52.    Mr. Johnson, sympathetic to Mrs. Henson's distraught reaction to the Board

members of her organization turning against her, explicitly stated, "If you were a Democrat [this] wouldn't be happening. You would be praised."

53.     Despite their qualms about Mrs. Henson's race, C2C and the Board were no strangers to C2C senior leadership campaigning for office. In 2018, C2C's Program Director, Kasie Clark ("Ms. Clark"), ran uncontested to represent SMD 6B09 in the District of Columbia. The Board took no issue with Ms. Clark's race perhaps because, as Mr. Johnson articulated, she ran as a Democrat.

54.     Notably, on March 15, 2022, Mr. Ross announced his intention to run for Congress again as a Republican for Florida's proposed 15th Congressional District. Thereafter, Mr. Ross was not asked to resign as Interim CEO of C2C.

55.     On November 5, 2021, Mrs. Henson received an email from Mr. Ross attaching a draft separation agreement from C2C.

56.     Several days later, Mrs. Henson responded to that email stating in part, "I propose that I continue through the end of the year as an employee working on key transition projects that the team is not equipped to handle alone . . . Then in January 2022, process the severance package."

57.     Per the terms outlined in her previous discussions with Ms. Schoeneman and Mr. Ross, Mrs. Henson proposed a 26-month compensation plan, originally proposed to her as a "buy-out" option including a lifetime board membership position upon the conclusion of her race and the option to return without interviewing, totaling $425,594, including the original 14-month offer made by Ms. Schoeneman and an additional 12-months of compensation after the first full year Mrs. Henson was employed full-time for C2C without receiving compensation.

58.     Mr. Ross responded to Mrs. Henson's email and counter-proposed a total severance payment of $175,000 and a last day of employment at C2C as Friday, November 19, 2021. The counter-proposal included no reference to health insurance benefits, no reference to her rightfully-earned 2021 bonus, and was approximately $250,000 less than the severance payment Ms. Schoeneman and Mr. Ross reassured her of on their October 22, 2021 phone call.

59.     Later that day, Mrs. Henson responded, "I'm truly at a loss for words for how disappointed I am with every single one of you and will never forget this. This offer is wildly insulting and does not include anything that we discussed. It doesn't even include my bonus for this year which I have rightfully earned. As you see it is not even one full year of compensation, my healthcare is not covered which was promised multiple times. It was my intention to handle this in a positive way and ensure a smooth transition. It appears that the C2C board is looking for a legal battle which is very sad to me since C2C has never been involved in anything negative."

60.     On November 18, 2021, Ms. Schoeneman outlined the severance offer in an email: "[1] $165,000 – your current base salary for 12 months and [2] $10,000 – cost to cover all your COBRA costs for 12 months."

61.     The following day, James E. Tyrrell III ("Mr. Tyrrell"), counsel to the Board, sent an email to Mrs. Henson stating, in part, "Dennis sent you a separation agreement for your consideration on November 5, 2021 . . . which included a $165,000 total severance package. You responded to the agreement with a counteroffer ($425,594) that can only be described as shocking to the conscience, especially in light of C2C's current financial position and its 501(c)(3) public charity status. As a courtesy to you, the severance amount was increased to $175,000 in the updated separation agreement Dennis sent to you on November 15, 2021 . . . The Board is aware of your Instagram posting this morning . . . in which you appear to make a thinly veiled effort to disparage C2C . . . Any additional communications disparaging C2C, whether thinly veiled or more explicit, would be seen as acting in bad faith."

62.     Mr. Tyrrell referenced a post made by Mrs. Henson on November 19, 2021 to her Instagram story on her Instagram account, @audreyhensonfl, reading "Cancel Culture: What started with the Me Too movement has grown to oust female founders from their own organizations and businesses."

63.     That same day, despite their assurances to Mrs. Henson that C2C would not make a public statement about her departure that could potentially harm her campaign, an email was sent with the subject line "C2C Announces Change in Leadership." The email read, "Today,

11

College to Congress (C2C) announced Audrey Henson, founder of the organization, has moved on to explore other opportunities and is no longer affiliated with the organization she founded in 2016. The following is a joint statement from Interim CEO Dennis Ross and Board of Directors Chair KayAnn Schoeneman: 'On behalf of the Board of Directors and all of C2C, we thank Audrey for founding this organization and shining a light on the mission of systemically changing Congress by empowering diverse, inclusive, and effective public servants. She's played an integral role in the organization's growth, establishing a comprehensive program that levels the playing field for Congressional interns. We wish her well and look forward to continuing College to Congress's strong commitment to making Capitol Hill a more effective and inclusive place for generations of public servants.'"

64.     Ms. Schoeneman and Mr. Ross's statement was later used against her by political and media opponents during her campaign. Despite this, C2C insisted that Ms. Henson refrain from publicly commenting on the separation and C2C's unlawful actions, for fear that it would publicly damage C2C's reputation and cause the organization to suffer.

65.     In addition, various members of the Board, including Ms. Schoneman, Mr. Ross, Mr. Alety, and Ms. Ellis went out of their way to attack Mrs. Henson and harm her campaign by directly contacting campaign donors and potential supporters to speak poorly of Mrs. Henson.

66.     No severance agreement was ever reached between the Board and Mrs. Henson.

67.     Mrs. Henson later withdrew from her congressional race, and did not appear on the ballot for the Republican primary on August 23, 2022. She ran unsuccessfully for Florida House of Representatives District 60.

### COUNT I
### Discrimination Based on Political Affiliation
### DC Code § 2-1401.01, et al.

68.     Plaintiff realleges and reincorporates the foregoing paragraphs as if fully set forth herein.

69.     Defendants' conduct as alleged above constitutes discrimination based on

political affiliation in violation of the DC Human Rights Act.

70.     C2C is an "employer" pursuant to DC Code § 2-1401.02(10) because it is a "professional association."

71.     Similarly, Ms. Schoeneman, Ms. Rako Gang, Mr. Tyrrell, Mr. Nance, Mr. Chan, Mr. Alety, Ms. Ellis, Mr. Johnson, Ms. Lebens, and Ms. Weems are "employer[s]" pursuant to DC Code § 2-1401.02(10) because, as members of the Board, they are "[people] acting in the interest of such employer [C2C]."

72.     Defendants engaged in unlawful discriminatory practices by discharging and failing to provide continued employment benefits to Mrs. Henson based upon her political affiliation with conservative political views after she announced her intention in July 2021 to run as a Republican Representative for the state of Florida.

73.     Defendants made both explicit statements and implicit omissions that indicated that Mrs. Henson's identification as a conservative Republican could cause adverse impacts upon C2C and its donors including that they "need[ed] a clean break" from Mrs. Henson and that if she were a Democrat "[this] wouldn't be happening."

74.     Defendants' actual malice and ill intent in discriminating against Mrs. Henson based on her political affiliation with conservative political views warrants an award of punitive damages under the DC Human Rights Act.

75.     Mrs. Henson is entitled to an award of economic damages in excess of $450,000.00 and non-economic damages in excess of $250,000.00.

## COUNT II

### Breach of Contract

76.     Plaintiff realleges and reincorporates the foregoing paragraphs as if fully set forth herein.

77.     Defendants' conduct as alleged above constitutes a breach of contract.

78.     The formal bylaws of C2C are to be construed as a contractual agreement between C2C and Mrs. Henson, since the continuing relationship between C2C and its members manifests

13

an implicit agreement by all parties concerned to abide by the bylaws. *See Meshel v. Ohev Sholom Talmud Torah*, 869 A.2d 343, 361 (D.C. Ct. App. 2005).

79.     C2C and the Board had an obligation under the terms of Mrs. Henson's employment contract, C2C's Employee Handbook, and the Bylaws of C2C to conform to proper procedures to remove her from her positions. By breaching those duties, Mrs. Henson has suffered both monetary damages, and the reputational damage from being improperly removed from the very organization she founded in 2016.

80.     Per subsection (d) of C2C's Bylaws, "Any Director may be removed from office, with or without cause, by a vote of two-thirds of the Directors then in office. The removal of a Director may only occur at a meeting called for the purpose of removing such Director. The meeting notice shall state that the purpose, or one of the purposes, of the meeting is removal of the Director. A removed Director's successor may be elected at the same meeting to serve the unexpired term of the removed Director."

81.     In addition, per subsection (i) of C2C's Bylaws, "Whenever these Bylaws require notice to be given to any Board member, the notice shall be given by mailing a notice of the meeting at least five (5) days before the date of the meeting, or by telephone, facsimile, personal delivery or electronic transmission at least three (3) days before the date of the meeting."

82.     The October 27, 2021 Board Meeting, where Mrs. Henson's was terminated, was not called for the purpose of removing Mrs. Henson.

83.     There was no reference to removal, except for a vague line-item on the October 27, 2021 Board Meeting Agenda, "CEO + C2C [S]tructure [U]pdate."

84.     The vote to terminate Mrs. Henson also did not receive a two-thirds majority vote by the Board.

85.     The Board failed to provide Mrs. Henson with adequate notice as required by the Bylaws.

86.     Thus, Mrs. Henson was not properly removed from her position as CEO of C2C in accordance with the procedures outlined in C2C's Bylaws, thereby constituting a material breach.

14

87.     Mrs. Henson is entitled to an award of general and compensatory damages in an amount to be determined at trial. Pursuant to the terms of the Bylaws, Mrs. Henson, upon prevailing, will be entitled to attorneys' fees.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## REQUESTED RELIEF

Audrey Henson respectfully prays for the following relief from this Court:

1.  For judgment in favor of Plaintiff against all Defendants jointly and severally;

2.  For compensatory and special damages in amount according to proof;

3.  For punitive and exemplary damages in an amount to be determined at trial;

4.  For reinstatement to her role as Chief Executive Officer and President of the Board of Directors of Defendant C2C;

5.  For reasonable attorneys' and costs of suit incurred herein, as permitted by law and/or contract;

6.  For prejudgment and postjudgment interest; and

7.  For such other and further relief as the Court deems just and proper.

Respectfully submitted,

Date: November 14, 2022

/s/ Matthew Sarelson
Matthew Seth Sarelson
D.C. Bar No. 1004865
msarelson@dhillonlaw.com
DHILLON LAW GROUP, INC.
1601 Forum Place, Suite 403
West Palm Beach, Florida 33401

Harmeet K. Dhillon
D.C. Bar No. CA00078
harmeet@dhillonlaw.com
DHILLON LAW GROUP, INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593
*Counsel for the Plaintiff*